UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

CITY OF DETROIT, MICHIGAN,                     Bankr. No. 13-53846 (Chapter 9)
                                               Adv. Proceeding 14-04732
    Debtor.                                    HON. STEVEN W. RHODES

_____/

MAURIKIA LYDA, et al.,

                                               Civil Action No. 15-CV-10038
    Plaintiffs/Appellants,                     HON. BERNARD A. FRIEDMAN

vs.

CITY OF DETROIT, MICHIGAN,

    Appellee.

_____/

## OPINION AFFIRMING BANKRUPTCY COURT'S ORDERS

    This matter is presently before the Court on an appeal from "the judgment, order, or decree of the bankruptcy judge entered in this adversary proceeding on the 19th day of November, 2014."[1] Notice of Appeal. The parties' briefs, as well as one amicus brief, have been filed. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide this appeal without oral argument.

    To the extent the Bankruptcy Court's decision depended on factual findings, this Court reviews those findings for clear error; and to the extent its decision depended on rulings of

---

[1] At issue is the Bankruptcy Court's November 19, 2014, "Supplemental Opinion Clarifying the Court's Bench Opinion Denying Plaintiffs' Motion for a Temporary Restraining Order and Granting Defendant's Motion to Dismiss; and Opinion Denying Plaintiffs' (1) Motion for Reconsideration; and (2) Motion to File a Second Amended Complaint." *See* Appellants' Am. Designation of the Record [docket entry 2] Pg. ID 2441-2465. A transcript of the Bankruptcy Court's bench opinion, which the November 19 opinion clarified, is also part of the record on appeal. *See id.* Pg. ID 2385-2520.

law, this Court review those rulings de novo. *See* 28 U.S.C. § 158(a); *In re Cook*, 457 F.3d 561, 565 (6th Cir. 2006).

Plaintiffs are ten residents of the City of Detroit, Michigan, who are residential customers of the Detroit Water and Sewerage Department ("DWSD"), and four organizations who claim to "represent[] members throughout the City of Detroit who are residential customers of DWSD." First Am. Compl. ¶¶ 20-33. The individual plaintiffs allege that in 2013 or 2014 the DWSD turned off their water, or threatened to do so, because their water bills were in arrears. Six of the plaintiffs indicate that their water service was turned off but then restored after they or their landlords paid a portion of the arrearage (generally one-third) and entered into payment plans, sometimes with advocacy assistance from one of the plaintiff organizations. Of the other four individual plaintiffs, two say they could not afford to pay the arrearage or the terms of the payment plan, or both, and remain without water; and the other two avoided service interruption when they, or their landlord, entered into payment plans. All plaintiffs find the cost of DWSD's water service to be unaffordable. *See* First Am. Compl. ¶¶ 35-63. Five of the plaintiffs claim their water service was turned off without notice or without "effective" notice, *see id.* ¶¶ 40, 43, 47, 56, 63, and they claim that "thousands of Detroit residents fac[e] water shut-offs without notice, or with deficient notice, on large water delinquencies, often of $1000 or more." *Id.* ¶ 96. Plaintiffs purport to represent themselves and a class of "all persons living in households who have been issued water-shutoffs by the [DWDS] and who have had their water or sewerage service shutoff." *Id.* ¶ 100.

Plaintiffs assert six claims. In Count I they claim that defendant has breached the "executory contracts" it has with each plaintiff. In Count II plaintiffs claim defendant has violated their procedural due process rights in various ways. In Count III plaintiffs claim defendant has

2

violated their equal protection rights by treating commercial account holders more favorably than residential account holders. In Count IV plaintiffs claim defendant has violated their right to water under the Michigan Constitution. In Count V plaintiffs claim defendant is estopped from changing its past practice of allowing water bills to go unpaid without turning off the account holder's water. And in Count VII[2] plaintiffs claim defendant has violated their human right, as well as their right as beneficiaries of a public trust, to water. For relief plaintiffs seek a temporary restraining order and a preliminary and permanent injunction to stop all "water shut offs and restore service to DWSD residential customers"; a declaration that defendant's billing and shutoff procedures violate due process and equal protection; a declaration that defendant's interference with plaintiffs' right to water violates their rights under the theories alleged in the complaint; a declaration that the water provided by DWSD is held in public trust; an injunction requiring defendant "to implement a water affordability plan with income based payments for DWSD residential customers"; and costs and attorney fees.

On August 18, 2014, plaintiffs filed a motion for a TRO. On August 28, 2014, defendant filed a motion to dismiss. On September 22 and 23, 2014, the Bankruptcy Court held a hearing on both motions. On September 29, 2014, the Bankruptcy Court issued its bench ruling denying plaintiffs' motion for a temporary restraining order and granting defendant's motion to dismiss. And on November 19, 2014, the Bankruptcy Court issued its Supplemental Opinion in which it clarified the reasons for its bench ruling and, in addition, denying plaintiffs' motions for reconsideration and for leave to amend their complaint. The Bankruptcy Court summarized its rulings as follows:

---

[2] Count VI is not a claim but a request for declaratory and injunctive relief.

> (1) Under § 904 of the bankruptcy code, except as to the plaintiffs' constitutional claims, this Court lacks the authority to grant the injunctive relief requested. *See* 11 U.S.C. § 904.
> (2) While issues arising under § 365 of the bankruptcy code relating to executory contracts do fall within the Court's core jurisdiction, the relationship between DWSD and its customers is not an executory contract. *See* 11 U.S.C. § 365. Moreover, even if the relationship is an executory contract, the relief that the plaintiffs seek is outside of the scope of § 365 and is prohibited by § 904.
> (3) Although the plaintiffs' allegations of violations of due process and equal protection are not subject to § 904 because they are constitutional claims, they fail to state claims on which relief can be granted.
> Finally, the Court concludes, in the alternative, that the evidence presented at the hearing on September 22 and 23, 2014, does not establish that the Court should grant a preliminary injunction.

Bankr. Ct.'s 11-19-14 Suppl. Op. at 3 (Pg. ID 2452).

Having reviewed the Bankruptcy Court's orders and the hearing transcript, as well as the amended complaint and the parties' briefs, the Court concludes that appellants have failed to show any error in the orders dismissing the complaint, denying plaintiffs' motion for a TRO, denying plaintiffs' motion for reconsideration, and denying plaintiffs' motion for leave to amend the complaint.

Turning first to the dismissal of the complaint, the Bankruptcy Court was clearly correct in determining that it lacked authority under the Bankruptcy Code to grant any of the relief plaintiffs requested. In a municipal bankruptcy such as this, the code states that "unless the debtor consents or the plan so provides, the [bankruptcy] court may not, by any stay, order, or decree, in the case or otherwise, interfere with (1) any of the political or governmental powers of the debtor; (2) any of the property or revenues of the debtor; or (3) the debtor's use or enjoyment of any income-producing property." 11 U.S.C. § 904. As the Detroit Water and Sewerage Department is

an arm of the City of Detroit, and the City did not consent to the requested relief or agree to it in the plan, the Bankruptcy Court could not have awarded any of the relief plaintiffs seek without violating § 904. *See In re City of Stockton*, 499 B.R. 802, 808 (Bankr. E. D. Cal. 2013) (noting that with § 904 "Congress has barred this court from interfering with any of the political or governmental powers of the City."); *In re City of Stockton*, 478 B.R. 8, 20 (Bankr. E. D. Cal. 2012) (noting that § 904 "is so comprehensive that it can only mean that a federal court can use no tool in its toolkit—no inherent authority power, no implied equitable power, no Bankruptcy Code § 105 power, no writ, no stay, no order—to interfere with a municipality regarding political or governmental powers, property or revenues, or use or enjoyment of income-producing property."). On this basis, the Bankruptcy Court's dismissal of Counts IV, V, and VII was proper.

Nor did the Bankruptcy Court err in dismissing Count I on the grounds that the relationship between the City and those to whom it provides water service is not an executory contract[3] over which that court might conceivably have exercised power under 11 U.S.C. § 365. The Bankruptcy Court correctly concluded that the City does not provide water service pursuant to a contract with its residents, but rather that it does so pursuant to state law and city ordinance. There is simply no "executory contract or unexpired lease" involved in the provision or interruption of water service, and therefore § 365 does not apply. Nor, even assuming such a contract could be said to exist, did the Bankruptcy Court err in noting that it still could not impose a "water affordability plan" on the City without running afoul of § 904.

---

[3] "The Bankruptcy Code does not explicitly define the term 'executory contract.' The legislative history, however, indicates that Congress intended the term to be defined as a contract 'on which performance remains due to some extent on both sides.'" *In re Terrell*, 892 F.2d 469, 471 (6th Cir. 1989). This does not describe the relationship between the City and its residents.

The Bankruptcy Court also correctly dismissed plaintiffs' due process and equal protection claims (Counts II and III). The due process claim depends on the allegations in the complaint that the City fails to provide its residents with adequate notice or an opportunity to be heard regarding water bills and shutoffs. The Bankruptcy Court correctly held that these allegations are conclusory in nature and do not suffice to allege a due process claim under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The correctness of this conclusion was strengthened by the actual bills and notices which were offered in evidence at the hearing on the plaintiffs' motion for a TRO and on defendant's motion to dismiss.[4] The Bankruptcy Court noted that the water bills show the amount owed, the payment due date, a warning that failure to pay could result in service disconnection, and provide an opportunity to contest the bill. If a customer fails to pay, defendant sends a shut-off notice prior to disconnecting service. The notices provide a customer service number and a 24-hour emergency number and request that the customer "avoid a shut-off by paying the total amount due or by making arrangements to pay by calling [customer service]." Further, shut-off notices inform delinquent customers they have the right to enter into a reasonable payment plan agreement, the right to file a complaint, and the right to a hearing, among other rights. *See* Hr'g Ex. 6. Such notice and opportunity to be heard prior to termination of service for failure to pay is all that is constitutionally required. *See Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1 (1978); *Mathews v. Eldridge,* 424 U.S. 319 (1976).

---

[4] Plaintiffs err in arguing that by considering this evidence the Bankruptcy Court improperly converted the motion to dismiss into a motion for summary judgment. As the bills and notices were "incorporated into the complaint by reference," they were properly considered in deciding the motion to dismiss. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

Plaintiffs' equal protection claim was also properly dismissed. This claim is based on the allegation that defendant treats its residential and commercial customers differently in that some commercial customers are substantially in arrears but defendant has not terminated their water service, whereas defendant may shut off water service to individual residents whose accounts are 60 days or $150 delinquent.

"To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 299 (6th Cir. 2006)). "[L]egislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985) (citations omitted). Further,

> rational-basis review in equal protection analysis "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." . . . [A] classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."
> A State, moreover, has no obligation to produce evidence to sustain the rationality of a statutory classification. "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." A statute is presumed constitutional, and "[t]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it," whether or not the basis has a foundation in the record.

*Heller v. Doe by Doe*, 509 U.S. 312, 319-21 (1993) (citations omitted).

This claim fails initially because plaintiffs have not adequately alleged that defendant treated them less favorably than any similarly situated *individuals*. "The purpose of the Equal Protection Clause is to 'protect[] against invidious discrimination among similarly-situated individuals' thereby ensuring that all similarly-situated people are treated alike." *Dog Pound, LLC v. City of Monroe, Mich.*, 558 F. App'x 589, 592 (6th Cir. 2014); *see also Napolitano, supra*, 648 F.3d at 379 (noting that plaintiff must allege he was treated less favorably than "similarly situated persons"). Plaintiffs have not cited any authority for the proposition, and the Court is aware of none, that an equal protection claim by individuals may be based on an allegation that they are treated less favorably than certain business entities or, conversely, that business entities may base such a claim on an allegation that they are treated less favorably than certain individuals. The mere fact that individuals and businesses both purchase water does not make them "similarly situated" for equal protection purposes any more than the fact that both pay taxes or that both may own property. For the claim to succeed, plaintiffs would have to show that defendant treated them differently as compared to similarly situated individuals.

Further, in response to defendant's motion to dismiss, plaintiffs did not "negative every conceivable basis which might support [the alleged difference in treatment]," *Heller, supra*, but simply pointed to the difference and labeled it "irrational" and "absurd." This does not suffice to state an equal protection claim. The Bankruptcy Court noted that the difference in treatment might be justified by the fact that commercial water customers have more complex service connections. Hr'g Tr. 15-16. The difference in treatment might also be justified by the fact that terminating water service to commercial customers could seriously harm their businesses, causing

8

layoffs and other undesirable economic consequences. The City might also reasonably find that commercial customers are more likely than residential customers to eventually pay past-due water bills. In any event, plaintiffs' equal protection claim fails because plaintiffs have not (1) compared themselves to similarly situated individuals, and (2) met their burden under *Heller* "to negative every conceivable basis which might support" the alleged difference in treatment.

Plaintiffs also appeal the Bankruptcy Court's denial of their motion for a TRO. Because the Court is affirming the Bankruptcy Court's dismissal of the complaint, the Court must necessarily affirm the denial of the TRO, as plaintiffs are not only unlikely to succeed but, in the Court's view, cannot succeed on the merits. Plaintiffs are not entitled to any relief based on a complaint that fails to state a claim.

Finally, plaintiffs appeal the Bankruptcy Court's order denying their motions for reconsideration and for leave to file a second amended complaint. As the Court is affirming the dismissal of the complaint, it also affirms the denial of plaintiffs' motion for reconsideration. As for the denial of the motion for leave to amend, a review of the docket sheet in this matter reveals that no such motion was ever filed. Instead, plaintiffs buried a request for leave to amend within their "Brief in Response to Defendant's Motion to Dismiss" [Bankr. docket entry 47, p. 6]. Such a request is improper. *See Begala v. PNC Bank*, 214 F.3d 776, 784 (6th Cir. 2000). Even if a motion for leave to amend could be made in this way, in the present case plaintiffs did not seek leave to cure the pleading defects listed by the Bankruptcy Court but merely offered to omit the word "breach" from their executory contract claim. Further, the motion was not supported by a brief or by a proposed amended complaint. The Court affirms the denial of this improperly asserted motion.

For the reasons stated above, the November 19, 2014, orders of the Bankruptcy Court clarifying its bench opinion, denying plaintiffs' motion for a temporary restraining order, granting defendant's motion to dismiss, denying plaintiffs' motion for reconsideration, and denying plaintiffs' motion for leave to file a second amended complaint are

AFFIRMED.


S / Bernard A. Friedman___
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated:  September 16, 2015
            Detroit, Michigan